[No. 16767. Department One. January 30, 1922.]

EUGENE S. RUMBAUGH, *Respondent,* v. F. M. JORDAN
*et al., Appellants.*[1]

MORTGAGES (132, 143)—FORECLOSURE—DEFENSES — EXTENSION OF
MATURITY OF DEBT. In an action to foreclose a mortgage, the de-
fense that its maturity had been extended for a period of three
years is not established by evidence showing the mortgagee offered
an extension for .that period at an interest rate of seven per cent,
and it appears that the mortgagor had notified his agent to get the
money at six per cent or at any rate better than the mortgagee's
proposition, and that, on the agent's taking the matter up with
the mortgagee, the latter withdrew his offer of an extension.

Appeal from a judgment of the superior court for
Pierce county, Askren, J., entered February 5, 1921,
upon findings in favor of the plaintiff, in an action to
foreclose a mortgage, tried to the court. Affirmed.

*Jesse Thomas,* for appellants.

*W. W. Keyes* and *J. H. Blakiston,* for respondent.

TOLMAN, J.—Respondent brought this action to fore-
close a real estate mortgage. Appellants defended up-
on the ground that, by agreement, the maturity of the
mortgage had been extended for a period of three
years. From a decree of foreclosure they appeal.

The burden was upon the appellants to establish
their affirmative defense, and they sought to do so by
introducing a letter from respondent, dated December
7, 1920, ten days before the maturity of the mortgage
debt, in which he says:

"You may renew it for another three years if you
wish at seven per cent."
and by showing that, immediately upon receipt of this
letter, they wrote their agent in Tacoma, a Mr. Young,
as follows:

[1]Reported in 203 Pac. 968.

"I am enclosing herewith copy of letter just received from Mr. Rumbaugh.

"If you can get this money for 6 per cent, what I am now paying for it, let me know at once. Or if you can do any better than the Rumbaugh proposition."

Young, upon receipt of this letter on December 10, 1920, showed it to respondent, and entered into negotiations with respondent, in the course of which he sought to convince respondent that he should renew the loan at six per cent interest, finally offering to compromise by renewing it at six and one-half per cent. Young does not claim that any agreement for renewal was then made, but does testify that, as he understood it, the matter was still left open so that respondent's offer might still be accepted. Upon the other hand, respondent's version of the conversation had with Young on December 10 is clear, explicit and emphatic to the effect that Mr. Young said Jordan would not renew at seven per cent; that he, Young, could get the money from another party who had one hundred thousand dollars to loan at six per cent; that he asked for and received the abstract for the purpose of having it brought down to date for use in procuring a new loan, and that though Young did offer to compromise by paying interest at the rate of six and one-half per cent, respondent absolutely and unqualifiedly rejected the proposed compromise and said that he would have nothing more to do with Young or with the matter of extension; that Young should go ahead and close the matter with the man who had one hundred thousand dollars to loan, and "I says, 'this ends this talk. You take this abstract of title over to the office and make your loan with your one hundred thousand dollar party,' and I left." Thereafter, and on December 14, Mr. Young testifies that he orally accepted respondent's offer of extension, having in the meantime re-

ceived authority from his principal so to do, but that respondent then claimed that his offer was withdrawn at the conference of December 10 and he had thereafter made arrangements to loan the money elsewhere. There is other testimony in the record more or less persuasive, but we do not consider it necessary to set it forth.

Appellants, while contending that Young's version of the conversation which he had with respondent on December 10 is the correct one, seem to urge that, if they are wrong in this, and if the facts are as stated by respondent, still there was no rejection of the offer of extension at the time because Young had no authority to accept or reject the offer; his authority being shown by the letter to him hereinbefore quoted, which letter was shown to and read by respondent at that time. We may agree that the letter, if strictly construed, does not give Mr. Young any authority to accept respondent's offer, but we cannot agree that it does not give Young apparent authority to reject the offer. Clearly the statement, "if you can get this money for 6 per cent, which I am now paying for it, let me know at once. Or if you can do any better than the Rumbaugh proposition." indicates an intention to authorize Young to engage the money at six per cent, or anything better than the seven per cent offered by respondent, and when Young did advise respondent that he had engaged, or could engage, money at six per cent, respondent was justified in believing from the letter shown him that Young had authority so to do, and that therefore, and as a natural consequence, his offer to extend was rejected. The trial court heard the witnesses and found the facts to be in accordance with respondent's version, which finding we think is fully justified by the record. Appellants, therefore, failed

to establish by a preponderance of the evidence that an extension had been agreed upon.

The judgment of the trial court must therefore be, and it is, affirmed.

PARKER, C. J., FULLERTON, MITCHELL, and BRIDGES, JJ., concur.